The Honorable Paul Miller State Senator Post Office Box 488 Melbourne, Arkansas 72556-0488
Dear Senator Miller:
I am writing in response to your request for my opinion on various questions I will paraphrase as follows:
 1. In the event a stray dog wanders onto an individual's property and remains there, what steps can the property owner take to cause the dog to leave in light of the provisions of Act 33 of 2009?
 2. In light of the fact that the property owner has been unable to catch the dog and take it to a vet for euthanization as provided by A.C.A. 5-62-105(a)(3), do provisions of A.C.A. § 5-62-105(a)(4) allow the property owner to hire someone to kill the dog?
 3. Since the dog appears to be in the custody of the property owner, could the property owner be in violation of A.C.A. § 5-62-103(a)(4) if he does not feed the dog?
You report the following background facts:
 It happens that a dog has been abandoned near [my constituent's] farm house. He has yelled at the dog, and threw sticks in its direction, but it won't leave. It just runs into the woods and later returns. . . . The dog sleeps on the porch furniture and has ruined it. *Page 2 
 The dog has not yet harmed anyone, but the man's family is afraid of it. The county has no personnel or method to retrieve the dog. He has not fed the dog, or provided it a place for shelter, knowing that would surely cause it to stay forever. The dog has now lost much of its weight.
RESPONSE
With respect to your first question, A.C.A. § 5-62-102 etseq. (Supp. 2009) set forth a variety of provisions relating to the treatment of animals. Among these is the use of reasonable force under appropriate circumstances. I cannot determine whether such circumstances exist in any particular instance. I believe the answer to your second question is "no." With respect to your third question, if the dog is in the "custody" of the property owner, an obligation to feed the animal exists. However, under the facts as you have recited them, I strongly question whether the animal could be described as being in your constituent's "custody." Only a finder of fact could determine if the animal is indeed in the property owner's "custody."
Question 1: In the event a stray dog wanders onto anindividual's property and remains there, what steps can the propertyowner take to cause the dog to leave in light of the provisions ofAct 33 of 2009?
The law with respect to the treatment of animals, whether abandoned or not, is set forth in title 5, chapter 62 of the Arkansas Code (Supp. 2009). Subsection 5-62-102(1) defines the term "abandon" as meaning "to desert, surrender, forsake, or to give up absolutely." I gather from your factual summary that the dog at issue has indeed been abandoned.
The chapter referenced above addresses various offenses related to the mistreatment and abuse of animals. The pertinent provisions for purposes of your question, however, appear to be located in A.C.A. § 5-62-105, which, in pertinent part, sets forth the following exemptions to the proscriptions defined in the rest of the statute:
 (a) This subchapter does not prohibit any of the following activities:
 (1) Reasonably acting to protect a person or a person's property from damage; *Page 3 
 (2) Injuring or humanely killing an animal on the property of a person if the person is acting as a reasonable person would act under similar circumstances and if the animal is reasonably believed to constitute a threat of physical injury or damage to any animal under the care or control of the person;
 (3) Engaging in practices lawful under the Arkansas Veterinary Medical Practice Act, Section 17-101-101 et seq., or engaging in activities by or at the direction of any licensed veterinarian while following accepted standards of practice of the profession, including the euthanizing of an animal;
 (4) Rendering emergency care, treatment, or assistance, including humanely killing an animal, that is abandoned, ill, injured, or in distress related to an accident or disaster, or where there appears to be no reasonable probability that the life or usefulness of the animal can be saved, if the person rendering the emergency care, treatment, or assistance is:
 (A) Acting in good faith;
 (B) Not receiving compensation; and
 (C) Acting as a reasonable person would act under similar circumstances[.]
I must take at face value your representation that there is no official in the county, including a law enforcement agent, that might capture this animal and potentially transport it to a pound or to a veterinarian as anticipated in the statute. I can do no more than point out that the options set forth above turn on the factual question of how the animal is behaving and whether it would be reasonable under the circumstances to kill it. I am not situated nor authorized to address these factual issues.
Question 2: In light of the fact that the property owner hasbeen unable to catch the dog and take it to a vet for euthanizationas provided by A.C.A. § 5-62-105(a)(3), *Page 4 do provisions of A.C.A. § 5-62-105(a)(4) allow the propertyowner to hire someone to kill the dog?
In my opinion, the answer to this question is "no." Subsection 5-62-105(a)(4)(B) is unequivocal in declaring that someone other than a veterinarian cannot receive compensation for killing an abandoned dog.
Question 3: Since the dog appears to be in the custody of theproperty owner, could the property owner be in violationof A.C.A. § 5-62-103(a)(4) if he does not feed the dog?
Subsection 5-62-103(a)(4) defines as an offense of cruelty to animals as an individual's failure "to supply an animal in his or her custody with a sufficient quantity of wholesome food and water." The Code does not define the term "custody." However, Random HouseWebster's Unabridged Dictionary (2d ed. 1999) defines this term as meaning "keeping; guardianship; care." Under the facts as you have recited them, this definition would not appear to apply to your constituent's relationship to the dog. Your constituent has reportedly not fed or watered the animal, nor even managed to approach it. If this is the case, I believe a finder of fact would in all likelihood conclude that your constituent does not have "custody" of the animal. Having offered this opinion, I must stress again that I am not a finder of fact and am consequently unable to determine what are the applicable circumstances.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General